## AMERICAN EXCHANGE NAT. BANK v. STEELEY. (No. 10216.)

Court of Civil Appeals of Texas. Dallas. Oct. 13, 1928.

Rehearing Denied Nov. 10, 1928.

Robertson, Robertson & Gannon, of Dallas, for appellant.

Tirey & Tirey, of Waco, for appellee.

JONES, C. J. This suit was instituted by appellant, American Exchange National Bank of Dallas, against appellee, C. R. Steeley, as acceptor of three trade acceptances, each for the sum of $203, drawn by Cascade Products Company, indorsed by such company to Howard P. Maye & Co., and pledged by the latter company with appellant.

A general demurrer was sustained to appellant's pleadings, a judgment adverse to appellant entered, and the appeal is duly perfected to this court. The petition contains all necessary allegations for a recovery of the amount of the three trade acceptances, on the theory that appellant was a holder in due course, and further alleged that the indebtedness of Howard P. Maye & Co. to appellant was in excess of any collateral security held.

Among other defenses pleaded by appellee was that of failure of consideration, in that there was a written agreement between the Cascade Products Company and appellee, under which certain goods were purchased by appellee on the conditions mentioned in the agreement, and the three trade acceptances would only become valid obligations of appellee in the event the Cascade Products Company performed its part of such agreement, and that such company had failed in this respect. Appellee's pleading of this defense contained all allegations necessary for a valid defense to appellant's cause of action. Appellant, by supplemental petition, admitted that there was such failure of consideration on the part of the Cascade Products Company, but denied that appellant had any actual or constructive notice of such agreement.

The trade acceptances were drawn by the Cascade Products Company in the ordinary form of such instruments, are of date May 14, 1924, accepted by appellee on said date, and matured, respectively, in 60, 90 and 120 days thereafter. As shown by the petition, each of these acceptances contain the following clause: "The obligation of the acceptor arises out of the purchase of goods from the drawer."

On the theory that the above-quoted clause of the trade acceptances rendered them non-negotiable, and because of appellant's admission in pleading that the consideration for their issuance had failed, the trial court sustained the general demurrer and entered the judgment adverse to appellant. If the three trade acceptances were rendered nonnegotiable because of the insertion in each of this clause, then appellee could interpose in this suit any defense that he could have interposed, if the suit had been instituted against him by the drawer, the Cascade Products Company, and the admission by appellant of the failure of consideration for the issuance of this paper would destroy appellant's cause of action and render its pleading subject to the general demurrer sustained by the trial court. Consequently, the character of these instruments as to their negotiability determine the issues of this appeal. Appellant, by proper assignment of error, supported by appropriate propositions of law, presents the theory that the trade acceptances are negotiable instruments and that its pleadings are not subject to demurrer; while appellee, by appropriate counter propositions, presents the opposite theory.

■■ It may be stated as the general rule that, wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make the bill or note subject to the terms of that contract, the negotiability of the paper is destroyed. Rule announced and cases cited in Strand Amusement Co. v. Fox, 205 Ala. 183, 87 So. 332, 14 A. L. R. 1126–1129; 33 A. L. R. 1174; 37 A. L. R. 655; 3 R. C. L. 883. It is also the general rule that, where the reference in a bill of exchange or promissory note is simply a recital of the consideration for which the paper was given, or is merely a reference to the origin of the transaction, its negotiability is not affected thereby. Article 5932, § 3, 1925 Rev. Stat.; 14 A. L. R. 1129–1133; 33 A. L. R. 1174–1175; 37 A. L. R. 655; 3 R. C. L. supra. Section 3 of article 5932 declares in specific terms that an unqualified order or promise to pay is unconditional, within the meaning of our Negotiable Instruments Act, "though coupled with * * * a statement of the transaction which gives rise to the instrument." This enactment is merely declaratory of the general rule of law above announced.

■■ It remains to determine whether the reference to the extrinsic contract to the effect that the obligation carried by the trade acceptances arose from the purchase of goods by the acceptor from the drawer destroyed the negotiability of these instruments. This question must be determined by the application of the rules of law above announced to the language employed in this reference. It is deducible as a corollary to the rule above announced that, if the reference to the extrinsic contract reasonably and fairly conveys the fact that the contract, forming the basis for the issuance of the trade acceptances, is an executed one; that is, such contract was completed by the execution of the

trade acceptances, then the language employed in such reference does not destroy the negotiability of the paper. Does the reference in the trade acceptances in the instant case reasonably and fairly convey the idea that their issuance was the final act in an executed contract between the drawer and acceptor? It must be borne in mind that the statute above referred to charged appellee with knowledge that, if he accepted the obligations, drawn by Cascade Products Company, containing no other reference to the contract between them than a statement of the transaction from which the obligations arose, he would, by his acceptance of such obligations, create a negotiable instrument with all of the attendant rights of such paper accruing to a holder in due course. Notwithstanding this knowledge, appellee accepted obligations carrying on their face a promise to pay to the order of the Cascade Products Company, within a specified time, a named sum of money, in which was shown only the consideration for, or origin of, the transaction. To our minds, the only reasonable conclusion to be drawn from the face of these trade acceptances is that their execution completed the contract between the parties and that the promise to pay was unqualified. We therefore conclude that the language of the obligation is no more than a statement of the consideration, or a reference to the origin, of the transaction, and did not destroy the negotiability of the instruments.

It is strenuously insisted by appellee that the case of Lane Co. v. Crum et al., 291 S. W. 1084, a decision by the Commission of Appeals, is conclusive authority against the conclusion announced in this case. When the decision in the reported case is analyzed in the light of the language of the reference clause in the trade acceptances then under consideration, we believe it is clearly distinguishable from the instant case. The reported case was tried on its merit, and there was shown to exist the defense of failure of consideration, based upon the same extrinsic contract that the pleadings of appellee show to have existed in this case; that is, that the trade acceptances would not become binding until the drawer had performed certain conditions that he failed to perform, and the same conditions that appellant in the instant case admits a failure of performance. The reference to the extrinsic contract in the reported case is in the following language:

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of purchase."

It will be noted that, to the reference in the instant case there is added in the reported case the additional language, "maturity being in conformity with the original terms of purchase." This added clause reasonably and fairly carries notice to a third person, contemplating the purchase of those instruments, that he must look to the terms of the contract upon which the goods were purchased, to determine what elements enter into their maturity, while, in the instant case, there is no language suggesting to a third person that he should look beyond the instruments themselves to determine their maturity. The instant case imports an executed contract between the parties to these trade acceptances; the reported case imports the existence of a contract of purchase whose terms determine the maturity of the trade acceptances. In the instant case the trade acceptances represent an unqualified promise to pay a certain sum at a certain time; in the reported case, the trade acceptances represent a promise to pay, qualified by an existing contract between the parties. We conclude, therefore, that the reported case is not contrary to the holding in the instant case.

It necessarily follows, in our opinion, that the trial court erred in sustaining the general demurrer, and that the case must be reversed and remanded.

Reversed and remanded.