**Opinion issued November 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00572-CR

_____

**BRADLEY RAY MCCLINTOCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd Criminal District Court**
**Harris County, Texas**
**Trial Court Case No. 1280089**

---

## OPINION ON REMAND

This case was remanded to us by the Court of Criminal Appeals. *McClintock v. State*, 444 S.W.3d 15 (Tex. Crim. App. 2014). That Court affirmed our initial analysis and remanded to address in the first instance an issue first raised in the State's petition for discretionary review. On remand, we must determine whether,

under the facts of this case, an officer's good-faith reliance on binding appellate precedent operates as an exception to both the federal exclusionary rule and Texas exclusionary statute. *See id.* at 20–21.

We conclude that the judge-made *Davis* exception to the judge-made federal exclusionary rule does not create an exception to the Texas exclusionary rule adopted by the Texas Legislature. Because the search warrant in this case was not based on probable cause, the Texas rule requires that the illegally obtained evidence be suppressed, and a new trial is required.

### Background

Appellant Bradley McClintock appealed his conviction for possession of marijuana, arguing that evidence seized from his apartment pursuant to a search warrant should have been suppressed. In the supporting affidavit used to procure the warrant, Department of Public Safety Officer R. Arthur stated the following:

> Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas. Affiant went to this location and found it to be located in Harris County, Texas. . . . Affiant and other peace officers with the Texas Department of Public Safety set up surveillance on this location. During surveillance of this location over the last week of the making of this affidavit, affiant observed the following: the downstairs of this location appears to be a business, there is an open to the public stairway that leads to the upstairs. . . . This stairway is open to the public in that it could easily be where a delivery person could or would make deliveries to the upstairs residence area. Affiant has observed a male individual come and go from this location, at hours well before and after the business hours of the business on the first

2

floor. Based on training and experience, Affiant found this to be consistent with possible narcotics activity.

On September 29, 2010, Affiant approached this location. At this time, from the outside of this location, Affiant could smell, what Affiant knows from training and experience to be, marijuana. On this same date at approximately 11:30 pm, Affiant requested the assistance of a narcotics canine at this location. Affiant spoke with and obtained the assistance of Houston Police Department Canine Officer Kristin Uhlin and her canine partner "Sita". Officer Uhlin stated that she and "Sita" are currently certified by the National Narcotics Detector Dog Association, # 48761, for the detection of the odors of marijuana, cocaine and methamphetamine. Affiant observed Officer Uhlin and "Sita" to deploy up to the second floor doorway using the open to the public stairway described above. Officer Uhlin stated to Affiant that at the doorway leading into the second floor of this location, "Sita" gave a positive alert at this location indicating the presence of one or more of the above named controlled substance.

On the basis of the Supreme Court's decision in *Florida v. Jardines*, 133 S. Ct. 1409 (2013), issued while the appeal was originally pending in this court, we held that the warrantless dog sniff conducted at McClintock's back door was unlawful. *McClintock*, 405 S.W.3d at 283–84. Setting aside that information, we concluded that the remainder of the affidavit was insufficient to establish probable cause necessary for a warrant. *Id.* at 284–88. We accordingly reversed the denial of McClintock's motion to suppress and remanded for a new trial. *Id.* at 288–89.

The State petitioned the Court of Criminal Appeals for review of our decision. In its first ground for review, the State asserted that Officer Arthur conducted the dog sniff in good-faith reliance on previously binding appellate precedent that held that a canine drug sniff did not constitute a "search" for Fourth

Amendment purposes. *McClintock*, 444 S.W.3d at 18. Relying on the Supreme Court's decision in *Davis v. United States*, 131 S. Ct. 2419 (2011), the State argued for the first time that pursuant to a good-faith exception to the exclusionary rule, the dog-sniff evidence should not be excluded. In its second ground for review the State argued, alternatively, that this court erred in its determination that the remainder of the affidavit could not furnish the probable cause necessary to support a search warrant. *McClintock*, 444 S.W.3d at 18.

The Court of Criminal Appeals granted the State's petition and considered both grounds for review. In a published opinion, the Court agreed with our determination that the remainder of the warrant affidavit did not clearly establish probable cause. *McClintock*, 444 S.W.3d at 19–20. Nevertheless, the Court vacated our judgment and remanded the case for consideration of the State's new argument regarding a good-faith exception to the federal and Texas exclusionary rules. *Id.* at 20–21. The Court observed that "the issue of the proper application of the exclusionary rule to the facts of this case is not remotely clear cut," and that, if its resolution of the issue is eventually needed, it "would benefit from a carefully wrought decision from the court of appeals." *Id.*

## Analysis

The question presented at this stage of the appeal is whether an exception applied by federal courts to the exclusionary rule, established in *Davis v. United*

4

*States*, also should apply in this case to permit reliance on illegally obtained drug evidence. This question requires us to interpret and apply the Texas exclusionary statute, Code of Criminal Procedure Article 38.23. Before turning to the parties' arguments about whether the exception applies in this case, we first review the scope of the exception established in *Davis*.

## I. *Davis v. United States*

In *Davis*, the police arrested petitioner Willie Davis for giving a false name during a routine traffic stop. *Davis*, 131 S. Ct. at 2425. After the officers had handcuffed Davis and secured the scene, they searched his vehicle and found a gun. *Id.* As a result, Davis was indicted on charges of being a felon in possession of a firearm. *Id.* at 2425–26. The officers had conducted the search of the vehicle in reliance on the Eleventh Circuit's interpretation of *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860 (1981). *Davis*, 131 S. Ct. at 2425–26. Davis acknowledged that then-existing precedent in the Eleventh Circuit allowed for the search of his vehicle, but he still preserved the issue and appealed. *Id.* at 2426.

As Davis's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009). The new, two-part rule of *Gant* held that a warrantless automobile search incident to arrest is constitutional only when (1) the arrestee is within reaching distance of the vehicle during the search, or (2) the police have reason to believe that the vehicle contains evidence relevant to the

crime of arrest. *Id.* at 332, 129 S. Ct. at 1712. Applying the new rule from *Gant*, the Eleventh Circuit concluded that the vehicle search incident to Davis's arrest was unconstitutional. *See Davis*, 131 S. Ct. at 2426. Nevertheless, the Eleventh Circuit declined to apply the exclusionary rule to the illegally obtained evidence based upon the officers' good-faith reliance on judicial precedent. *See id.*

The Supreme Court granted certiorari and considered "whether to apply the exclusionary rule when the police conduct a search in objectively reasonable reliance on binding judicial precedent." *Id.* at 2428. The Court acknowledged that *Gant* applied retroactively to the case and that the search was unlawful, despite the fact that the officers' conduct was not culpable. *Id.* at 2428, 2431. Rather than viewing the issue as one of retroactivity, the Court based its analysis on the "good faith" test it established in *United States v. Leon*, 468 U.S. 897 (1984). *Davis*, 131 S. Ct. at 2427–28.

The Court recognized that exclusion of evidence "exacts a heavy toll on both the judicial system and society at large," but stated that the rule should nonetheless be applied as a "last resort." *Id.* at 2427. The "sole purpose" of the rule is to "deter future Fourth Amendment violations." *Id.* at 2426. Accordingly, exclusion is appropriate only when its "deterrence benefits" outweigh its "heavy costs." *Id.* at 2427. These circumstances exist when the police exhibit "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.*

Applying the deterrence principles to the facts of the case, the Court concluded that exclusion of evidence obtained in reliance on binding judicial precedent would not be appropriate:

> About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances. The deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty.

> That is not the kind of deterrence the exclusionary rule seeks to foster. We have stated before, and we reaffirm today, that the harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity.

*Id.* at 2429 (quotations omitted). Thus the Court established a new exception to the federal exclusionary rule: "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.*

The State argues at the outset that the *Davis* exception should apply in this case because Officer Arthur acted in objectively reasonable good-faith reliance on pre-*Jardines* precedent when he conducted the unlawful dog-sniff search. In response, McClintock contends that we cannot apply the *Davis* exception to this

7

case without first affording him a chance to develop a factual record regarding the issue of good faith. *See State v. Esparza*, 413 S.W.3d 81, 89 (Tex. Crim. App. 2013) (refusing to uphold trial court's ruling under an alternative theory of law applicable to the case when the appellant did not have the opportunity to develop a factual record on that issue). He also responds that no precedent in the relevant jurisdiction specifically authorized the search, which he contends is a necessary condition to applying the *Davis* exception.[*] *See Davis*, 131 S. Ct. at 2429; *see also*

---

[*] Numerous federal courts of appeals have addressed how explicit or settled the appellate precedent must be to trigger the *Davis* exception. A panel of the Third Circuit adopted a strict rule, holding that the precedent must be from within the Circuit and specific to the facts at hand. *United States v. Katzin*, 732 F.3d 187, 210 (3d Cir. 2013). That panel's decision was vacated, however, and after rehearing the appeal *en banc* the court rejected such a narrow reading of *Davis*:

> Stated as a syllogism, if binding appellate precedent specifically authorizes the precise conduct under consideration, then it will likely be binding appellate precedent upon which police can reasonably rely under *Davis*. However, this does not make the reverse syllogism true, namely, that if a case is binding appellate precedent under *Davis*, then it must specifically authorize the precise conduct under consideration. *Davis*' holding is broader: "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."

*United States v. Katzin*, 769 F.3d 163, 176 (3d Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 1448 (2015). Other courts have also rejected the contention that "binding appellate precedent" requires precedent within the Circuit and specific to the facts at hand, instead focusing on whether reliance on a body of law is objectively reasonable. *See United States v. Brown*, 744 F.3d 474, 478 (7th Cir. 2014); *United States v. Stephens*, 764 F.3d 327, 337 (4th Cir. 2014), *cert. denied*, 83 U.S.L.W. 3860 (U.S. Oct.

*id.* at 2435 ("This case does not present the . . . question [of] whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled.") (Sotomayor, J., concurring in the judgment).

But we need not address the parties' arguments about whether Officer Arthur acted with objective good-faith reliance on binding precedent if *Davis* does not create a valid exception to the Texas exclusionary statute. If good-faith reliance on binding appellate precedent is not a valid exception to the Texas exclusionary statute, then we must remand this cause to the trial court for a new trial without the evidence that should have been suppressed.

## II. Application of the Texas exclusionary statute

Both the U.S. and Texas constitutions protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Similarly, the Texas Constitution ensures that people "shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches." TEX. CONST. art. I, § 9. Neither constitutional provision prescribes a remedy to be

---

5, 2015); *United States v. Aguiar*, 737 F.3d 251, 261 (2d Cir. 2013). Nevertheless, precise rules about when reliance on appellate precedent is objectively reasonable are difficult to ascertain. *See Brown*, 744 F.3d at 478 ("There is legitimate debate about whether precedent from Circuit A could be deemed 'binding' (for the purpose of *Davis*) when the search occurs in Circuit B, where the issue remains unresolved.").

applied when a person's rights under the provision are violated. *See Davis*, 131 S. Ct. at 2426 ("The [Fourth Amendment] says nothing about suppressing evidence obtained in violation of this command."); *Perez v. State*, 11 S.W.3d 218, 223 (Tex. Crim. App. 2000) ("Whether a violation of [Article 1, Section 9] (e.g. an unreasonable search) results in the suppression of evidence obtained as a result of that violation (i.e. employment of an exclusionary rule) is a separate, collateral issue not encompassed by the right granted in that constitutional provision.") (Keller, J., concurring in the judgment); *see also Welchek v. State*, 247 S.W. 524, 528–29 (Tex. Crim. App. 1922).

Federal courts enforce a judge-made exclusionary rule to "compel respect for the constitutional guaranty." *Elkins v. United States*, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444 (1960). The federal rule harbors several exceptions for police conduct that was conducted in reasonable reliance on a facially valid source of legal justification. *See Davis*, 131 S. Ct. at 2428–29 (reliance on subsequently invalidated binding appellate precedent); *Illinois v. Krull*, 480 U.S. 340, 350, 107 S. Ct. 1160, 1167 (1987) (reliance on a subsequently invalidated statute); *United States v. Leon*, 468 U.S. at 922–24, 104 S. Ct. at 3420–21 (reliance on subsequently invalidated warrant).

In Texas, however, the exclusionary rule is not merely a judicial creation. It was enacted by the Legislature. *See* TEX. CODE CRIM. PROC art. 38.23; *Miles v.*

10

*State*, 241 S.W.3d 28, 33–36 (Tex. Crim. App. 2007) (explaining the history of Article 38.23 and its precursors). The Texas exclusionary statute is "broader than its federal counterpart" and is therefore more broadly protective of individual rights. *See Miles*, 241 S.W.3d at 34.

The federal constitution does not "limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, S. Ct. 2035, 2040 (1980). Both the Court of Criminal Appeals and the Supreme Court of Texas have observed that "[t]he federal constitution sets the floor for individual rights; state constitutions establish the ceiling." *Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991) (quoting *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986)).

Texas courts thus repeatedly have refused "to blindly follow the Supreme Court's decisions interpreting the Fourth Amendment" and instead have conducted their own examination of the Texas Constitution and associated statutes. *Id.*; *see also Hulit v. State*, 982 S.W.2d 431, 436–37 (Tex. Crim. App. 1998). Such analyses do not fall afoul of the Supremacy Clause, as they do not lead to holdings about an individual's rights under federal law. *Hulit*, 982 S.W.2d at 437. Overall, "[t]he Supremacy Clause means that, in practical terms, persons will always be

11

able to avail themselves of the greater right." *Id.* Here, the statutory rights provided by Article 38.23 are greater than those provided by the federal exclusionary rule.

In relevant part, Article 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. . . .

(b) It is an exception to the provisions of subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. art. 38.23.

Notably, the statute contains an explicit exception in subsection (b) for evidence obtained in objective good-faith reliance on a warrant "based on probable cause." The Court of Criminal Appeals has refused to entertain exceptions to the Texas exclusionary rule that are not consistent with Article 38.23's text. *Compare Wehrenberg v. State*, 416 S.W.3d 458, 468 (Tex. Crim. App. 2013) (recognizing independent-source doctrine as an exception, consistent with the statute), *with State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (refusing to recognize inevitable-discovery doctrine, because it is inconsistent with the statute). This is in accordance with the general rule that "where an express exception exists in a statute, the statute must apply in all cases not excepted." *Garcia v. State*, 829 S.W.2d 796, 800 (Tex. Crim. App. 1992).

The Court of Criminal Appeals has held that Article 38.23(a)'s use of the term "obtained" calls for the exclusion of evidence only when there is a "causal connection" between the illegal conduct and the acquisition of the evidence. *Wehrenberg*, 416 S.W.3d at 468. Consequently, doctrines that exempt evidence from exclusion are consistent with the statute only when they do not involve such a causal connection. *See id.* at 469–70; *Johnson v. State*, 871 S.W.2d 744, 750 (Tex. Crim. App. 1994). When a causal connection between the illegal conduct and the acquisition of evidence is present, the evidence has been "obtained" in violation of the law, and the evidence must be excluded under Article 38.23 regardless of any exception applied under federal law. *See Daugherty*, 931 S.W.2d at 271; *accord Howard v. State*, 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (op. on reh'g) (declining to adopt exception for good-faith reliance on a subsequently invalid statute).

The *Davis* exception assumes a causal connection and thus cannot be applied under Article 38.23(a). The *Davis* doctrine involves illegal police conduct that directly causes the acquisition of the evidence. *See Davis*, 131 S. Ct. at 2430–32 (clarifying that the Court's retroactivity jurisprudence established that police in that case acquired evidence through unlawful means). Good-faith reliance on binding precedent is not a doctrine that eliminates the causal connection between the illegal activity and the acquisition of the evidence. Rather, it treats that

13

connection as a given. The exception is thus inconsistent with Article 38.23's text. *See Daugherty*, 931 S.W.2d at 270 (once "the illegality and its causal connection to the evidence have been established, the evidence must be excluded" under Article 38.23).

Rather than arguing that the *Davis* exception for good-faith reliance on appellate precedent is consistent with the text of Article 38.23(a), the State argues that the marijuana evidence seized from McClintock's home should be exempted from exclusion under Article 38.23(b). Subsection (b) provides an exception to subsection (a) for evidence obtained by an officer "acting in objective good faith reliance upon a warrant issued by a neutral magistrate based upon probable cause." TEX. CODE CRIM. PROC. art. 38.23(b). The State asserts that the *Davis* exception applies in this case to save the dog-sniff evidence from being excluded from the magistrate's probable-cause determination.

The State concedes that, according to binding precedent, a "search warrant may not be procured lawfully by the use of illegally obtained information." *State v. Cuong Phu Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015) (quoting *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980), *overruled on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989)). Ordinarily, when a search warrant is issued on the basis of an affidavit containing illegally obtained information, as it was in this case, the evidence seized pursuant to the warrant is

admissible only if the independently and lawfully acquired information in the affidavit clearly established probable cause. *McClintock*, 444 S.W.3d at 19; *Brackens v. State*, 312 S.W.3d 831, 838 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The warrant in this case did not contain sufficient lawfully acquired information to clearly establish probable cause without the dog-sniff evidence. *McClintock*, 444 S.W.3d at 19–20.

The State argues that because Officer Arthur acted in good-faith reliance on pre-*Jardines* precedent when he conducted the dog-sniff search, the dog-sniff evidence should be acceptable to support the magistrate's probable-cause determination. This would allow the warrant the officers relied on to seize the marijuana evidence in this case to be a "warrant issued by a neutral magistrate based on probable cause," and therefore render the marijuana evidence admissible under the statutory exception. TEX. CODE CRIM. PROC. art. 38.23(b). The State contends that the bar against consideration of illegally obtained evidence in the probable cause determination for a warrant is a "judicial construct," not rooted in Article 38.23's text, which can be modified "as policy demands."

We are not persuaded by the State's argument that policy considerations justify disregarding Article 38.23(b) and applying the *Davis* exception to cure a flawed probable-cause determination. The State ignores the fact that it seeks an exception to a statutory remedy governed by Article 38.23. The Court of Criminal

Appeals has expressly held that the decision to implement such an exception must be rooted in an analysis of the text of Article 38.23. When considering whether the "inevitable discovery" doctrine could exempt evidence from exclusion in Texas, the Court explained:

> The whole issue here is whether for purposes of interpreting Article 38.23(a), we agree that "inevitable discovery" really does break the causal connection between the illegality and the evidence. That depends, of course, upon what Article 38.23(a) means when it says "evidence obtained in violation of" law. And this is purely a question of statutory construction. Not even the Supreme Court would presume to instruct us on how our own statutes should be construed. Were we implementing a court-made rule we would of course be free to follow the lead of the United States Supreme Court. However, because this is a statute enacted by the Texas Legislature, we are required to interpret the language of the statute in order to implement the legislative intent in enacting it.

*Daugherty*, 931 S.W.2d at 271. We, too, anchor our analysis to the text of Article 38.23, not our own evaluation of the wisdom of its policy.

Here, the State asks us to broaden the exception of Article 38.23(b) in a manner not supported by its text. It is true, as the State argues, that the text of Article 38.23(b) does not expressly forbid the consideration of illegally obtained evidence when considering whether the magistrate's warrant was based on probable cause. But nothing in subsection (b) expressly supports the State's expansive reading either, and "[w]here a statute contains an express exception, its terms must apply in all cases not excepted." *Daugherty*, 931 S.W.2d at 270. Thus,

16

subsection (a) must apply to suppress all evidence not expressly excepted by subsection (b).

The Court of Criminal Appeals has held that the phrase "based on probable cause" in Article 38.23(b) requires an independent finding of probable cause; an officer's good-faith reliance on a warrant subsequently invalidated for lack of probable cause does not fulfill the statutory exception. *See Curry v. State*, 808 S.W.2d 481, 482 (Tex. Crim. App. 1991). The exception in subsection (b) has only been satisfied in cases involving technical defects in warrants, not warrants with defects concerning probable cause. *See, e.g.*, *Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997) (concluding that exception applied in case where warrant lacked magistrate's signature); *Brent v. State*, 916 S.W.2d 34, 38 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that exception applied despite warrant based on unsigned affidavit). Furthermore, as recognized above, illegally obtained evidence cannot provide the probable cause necessary to support a warrant. *Le*, 463 S.W.3d at 877.

The State suggests that *Davis* provides a reason to deviate from these past decisions. But the Court of Criminal Appeals already has recognized that its interpretation of Article 38.23(b) stands in contrast to the federal good-faith exception, established in *United States v. Leon*, for officers relying on a subsequently invalidated warrant. *See Curry*, 808 S.W.2d at 482 ("[Article

38.23(b)] *requires a finding of probable cause*, while the exception enunciated in *Leon* appears more flexible in allowing a good faith exception if the officer's belief in probable cause is reasonable.").

The State's proposed application of the *Davis* exception essentially mirrors past attempts to use *Leon*, which the Court of Criminal Appeals already has held does not satisfy the text of Article 38.23(b). Tellingly, the Supreme Court itself recognized that its decision in *Davis* was merely an extension of the good-faith exception established in *Leon*. *See Davis*, 131 S. Ct. at 2428–29 ("Under our exclusionary rule precedents, [the] acknowledged absence of police culpability dooms Davis's claim. . . . Indeed, in 27 years under *Leon*'s good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct."). We do not perceive any difference between the arguments previously rejected by the Court of Criminal Appeals and the State's proposed application of *Davis*.

We reject the State's proposed application of the *Davis* exception to allow consideration of illegally obtained evidence in the magistrate's probable cause analysis for a warrant. As the Court of Criminal Appeals affirmed, the dog-sniff search was unlawful. Binding precedent holds that illegally obtained evidence cannot provide probable cause to support a warrant. Based on past interpretation of Article 38.23, we conclude that the good-faith exception established in *Davis* does

not apply to allow the State to use the illegal dog-sniff evidence to support the warrant. As a result, the warrant used to seize the marijuana evidence from McClintock's residence was "not based on probable cause," and the marijuana evidence does not satisfy Article 38.23(b). Accordingly, the Texas exclusionary statute applies and the marijuana evidence must be suppressed. *See* TEX. CODE CRIM. PROC. art. 38.23(a).

## Conclusion

We overrule the State's sole issue. We remand the case to the trial court for a new trial without the evidence that should have been suppressed.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).